UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 08-11-GWU

DAVID LEE KING,                                                                      PLAINTIFF,

VS.                      **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                 DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the

alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

08-11  David Lee King

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, David Lee King, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment due to loss of vision in the left eye.  (Tr. 18).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. King retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 19-21).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 57, high school education, and work experience as a carpenter could perform any jobs if he could perform work at all exertional levels, but was limited to work that did not require acute binocular vision or depth perception, or operation of a motor vehicle.  (Tr. 224).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies.  (Tr. 225).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.  In the present case, although the plaintiff presented evidence of some physical conditions, he failed to prove that he was functionally limited to a greater degree than found by the ALJ.

08-11  David Lee King

Mr. King alleged disability due to arthritis and blindness in the left eye.  (Tr. 60-1).  He stated that he could not work at his old job of carpentry because of lack of depth perception and lack of peripheral vision on his left side.  (Tr. 211).  Arthritis gave him difficulty with his knees and hands, and it was difficult to walk, crawl, squat, and even sit.  (Tr. 213, 216-19).

Medical evidence in the transcript shows that the plaintiff underwent left eye surgery in April, 1983.  (E.g., Tr. 283).  His treating optometrist, John Morton, stated that he had seen Mr. King since June, 1994, and he had a permanent loss of vision in his left eye, but expected no impairment in ambulation, handling objects, or traveling.  (Tr. 113).  Subsequently, in January, 2007, Morton submitted an affidavit confirming that Mr. King was essentially blind in the left eye, and that this condition affected his depth perception and all activities connected therewith.  (Tr. 177).  These restrictions are consistent with the ALJ's findings.

Dr. Mark Burns conducted a consultative physical and orthopedic evaluation of Mr. King in September, 2005.  (Tr. 137).  Mr. King stated that he had had a problem with arthritis for about three years, but had partial blindness in his left eye for approximately twenty years.  (Id.).  He reported no difficulty seeing from his right eye, and testing by Dr. Burns showed 20/20 vision from the right eye with glasses.  (Tr. 138).  Dr. Burns found few abnormalities related to arthritis, and noted that Mr. King was able to perform gait and station, heel, toe, and tandem walk and do a knee squat with minimal difficulty.  (Tr. 139).  There were no limitations on the

08-11 David Lee King

orthopedic examination, although crepitus and minimal pain were present in the right shoulder and crepitus was present in the right knee. (Id.). An x-ray of the <u>left</u> knee was interpreted as normal. (Tr. 130). Dr. Burns found no restrictions on most activities, but recommended against "activities involving seeing." (Tr. 139).[1]

A state agency physician, Dr. John Rawlings, reviewed the evidence in March, 2006 and commented that although the plaintiff was blind in the left eye, his normal visual acuity in the right eye should result in a minimal impact on basic work-related activity. (Tr. 153). He felt that the comment by Dr. Burns regarding difficulty in activities involving seeing would be likely to be true for conditions involving good binocular vision, but most activities would be unimpaired. (Id.).

Dr. Michele Bagley, the plaintiff's family physician, submitted very brief office notes of treatment between 2002 and 2005. Her November 8, 2005 office note is the only one after the plaintiff's alleged onset date of May 27, 2005. It shows that he was complaining of bilateral knee pain and some swelling, but she noted only minimal tenderness on examination, and recommended an x-ray along with a non-steroidal non-inflammatory medication. (Tr. 142). Subsequently, Dr. Bagley

---

[1] Dr. Burns prepared a residual functional capacity assessment in which he checked boxes indicating that the plaintiff would have some restrictions in reaching, handling, feeling, pushing, pulling, hearing, and speaking, but would have no restrictions on seeing. (Tr. 134-6). Since there are no findings to support limitations in the first-named areas, and clear findings to support restrictions on seeing, Dr. Burns presumably made typographical errors in filling out the report. The plaintiff has not raised any issue regarding the assessment form.

submitted a letter dated January 24, 2007 stating that the x-rays had shown no knee pathology, and Mr. King reported some improvement on medication. (Tr. 176). Her only physical finding was some grating of the right knee with forced flexion. (Tr. 176). A CT scan of the knees subsequently showed osteoarthritis in both knee joints and lateral subluxation of both patellas, more on the right than the left. (Id.). She explained that this condition meant that Mr. King's kneecaps did not sit perfectly in the midline and could result in some pain. (Id.). She added that blood tests in November, 2006 were negative for an inflammatory process and negative for rheumatoid arthritis. (Id.). No functional restrictions were suggested.

    The plaintiff argues that both Morton, whom he describes as a treating physician, and Dr. Burns gave opinions limiting the plaintiff from essentially all activity due to his left eye blindness. Initially, it should be noted that Morton is an optometrist, not a physician, and optometrists are not acceptable medical sources under the Commissioner's regulations. 20 C.F.R. § 404.1513. In addition, Morton appeared to initially indicate that the plaintiff would have no impairment in his ability to do any work-related activity (Tr. 113), and only later completed an affidavit stating that Mr. King's loss of vision in the left eye would affect his depth perception "and all activities associated therewith" (Tr. 177). The ALJ included limitation on depth perception in his hypothetical question, and the uncontradicted testimony of the VE was that there were jobs which could be performed. (Tr. 225). Although Dr. Burns, a one-time examiner, made a general statement that he would not recommend

08-11 David Lee King

"activities involving seeing," the ALJ could reasonably have relied on the statement of Dr. Rawlings limiting the plaintiff only in regard to activities involving good binocular vision. (Tr. 153). In addition, the plaintiff's own testimony indicated that he went to Wal-Mart with his brother almost every day (Tr. 212), and his daily activities did include some activities such as mowing his lawn and taking out garbage (Tr. 70). These daily activities are not consistent with an individual who is unable to do any activity as a result of visual limitations.

Counsel for the plaintiff also places great weight on the diagnostic blood test performed in November, 2006 for Dr. Bagley. As previously noted, Dr. Bagley stated that the results were negative. (Tr. 176). The plaintiff insists that the report shows results consistent with rheumatoid arthritis; however, the report says that Mr. King had a rheumatoid factor of 7 international units per milliliter, with any number below 14 being regarded as within the normal reference range, and another test, called the cyclic citrullinated peptide test, was less than 20, and also said to be in the negative range. (Tr. 178). The report gives interpretations for various <u>possible</u> outcomes of the testing and counsel for the plaintiff is reading these interpretive notes out of context. (Tr. 178-9). Accordingly, the report provides no basis for a remand.

The plaintiff submitted additional evidence to the Appeals Council, including x-rays of the knees and feet obtained after the date of the ALJ's decision and clearly not available for his consideration. (Tr. 181-92). Evidence submitted to the Appeals

08-11 David Lee King

Council cannot be considered as a part of this court's substantial evidence review unless it is both new and material and there was good cause for failing to submit it earlier. <u>Cline v. Commissioner of Social Security</u>, 96 F.3d 146, 148-9 (6th Cir. 1996). The new evidence fails the materiality test because it does not show any clear functional restrictions which would have caused the ALJ to reach a different conclusion.

The decision will be affirmed.

This the 23rd day of September, 2008.

Signed By:

<u>G. Wix Unthank</u>

United States Senior Judge